**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-03152-CMA

RONALD C. TAYLOR,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER REVERSING AND REMANDING ALJ'S DECISION
DENYING SOCIAL SECURITY BENEFITS**

---

    Plaintiff Ronald Taylor alleges he suffers from, among other things, disabling diarrhea, irritable bowel syndrome (IBS), dementia, pain disorder, and foot- and ankle-related infirmities. An ALJ disagreed, reasoning that Plaintiff had some impairments but they were not severe enough to disqualify him from all work. On the way to reaching this determination, however, the ALJ failed to address the opinions of several of Plaintiff's treating physicians. This oversight constitutes reversible error and requires remand to the ALJ. Plaintiff challenges the ALJ's decision on a number of other grounds: for the reasons stated below, however, these other arguments either fail or will not be considered in light of the remand.[1]

---

[1] The parties are familiar with the procedural and factual background related to this case. Because this Court is remanding the case to the ALJ for further consideration of certain issues, it condenses its discussion of the background facts to those relevant for the rulings contained in this order.

## I. STANDARD OF REVIEW

This Court's review of the ALJ's determination is limited to determining whether the ALJ's decision is supported by substantial evidence and whether the Commissioner—through the ALJ—applied the correct legal standards. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. *Wall*, 561 F.3d at 1084. In reviewing the record and the arguments of counsel, the Court does not reexamine the issues de novo, *Sisco v. United States Department of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993), nor does it re-weigh the evidence or substitute its judgment for that of the Commissioner, *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Thus, even when some evidence may have supported contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

## II. ANALYSIS

**A.     SEVERITY OF SYMPTOMS**

Plaintiff's first argument is that the ALJ erred in failing to consider a number of ailments as "severe" for purposes of step two of the five-step sequential analysis.

An impairment is "not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also Williamson v. Barnhart,* 350 F.3d 1097, 1100 (10th Cir. 2003) ("[A] claimed 'physical

2

or mental impairment must be of a nature and degree of severity sufficient to justify its consideration as the cause of failure to obtain any substantial gainful work.'"). Further, "while the showing a claimant must make at step two is de minimis, a showing of the mere presence of a condition is not sufficient." *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008). Finally, an error at step two is usually "harmless when the ALJ reache[s] the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *see also Groberg v. Astrue*, 415 F. App'x 65, 67 (10th Cir. 2011) ("An error at step two concerning the severity of a particular impairment is usually harmless when the ALJ . . . finds another impairment is severe and proceeds to the remaining steps of the evaluation.").

The Government has a two-pronged defense to Plaintiff's step-two arguments: first, the ailments are not severe; second, even if they are severe, they were considered in the ALJ's RFC analysis and, pursuant to *Carpenter*, any error in failing to call them severe is harmless. The Court considers, by category, each ailment that Plaintiff alleges is severe or otherwise unduly discounted by the ALJ.[2]

---

[2] The Court only considers the alleged impairments about which Plaintiff has made some sort of colorable argument. At points in the briefing, Plaintiff lists a number of additional impairments without accompanying analysis as to why they qualify as severe (or disabling). *See* (Doc. # 12 at 25.) These arguments are forfeited. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review."); *Murrell v. Shalala*, 43 F.3d 1388, 1390 (10th Cir. 1994) (reasoning, in the Social Security context, that "perfunctory complaints [that] fail to frame and develop an issue sufficient to invoke appellate review" are forfeited and collecting further authorities in support of this proposition).

### 1.     Chronic Diarrhea and Irritable Bowel Syndrome

Plaintiff first alleges that the ALJ unduly discounted his chronic diarrhea and IBS in finding these impairments neither severe nor disabling.

As to these alleged impairments, Plaintiff's preferred narrative is that he has had constant, debilitating diarrhea since October 2006, as the result of a stab wound he suffered at that time. Plaintiff claims the medical evaluations provided by Dr. Scott Sutton, a treating physician, largely settle the question of the disabling effects of Plaintiff's diarrhea.

Dr. Sutton ultimately diagnosed Plaintiff with IBS, and his clinic has treated Plaintiff intermittently for diarrhea since October 2007. The record supplies notations from Dr. Sutton (or his colleagues) about Plaintiff's diarrhea complaints, but these notes are often based on Plaintiff's self-reporting, sometimes made in the context of Plaintiff asking that the diagnosis be specifically included in his disability paperwork, and never include an analysis of the severity—as opposed to the existence—of Plaintiff's symptoms. *See, e.g.*, (AR 1313) (January 2012 evaluation noting that Plaintiff reported he had to use the bathroom for diarrhea twice while he was at the hospital for an orthotics appointment); (AR 967) (May 2010 record noting in the section for "GI" that Plaintiff represents he has had "diarrhea for years");[3] (AR 1069) (May 2011 record from a nurse noting that Plaintiff complained of black, bloody stool); (AR 1075) (August 2011 record from a nurse noting that Plaintiff has had diarrhea that caused a pain score of ten

---

[3] While the Government suggests there is no mention of Plaintiff's diarrhea from his May 13, 2010 hospital visit, (Doc. # 16 at 4 (citing AR 967-97), the record evidence, *see* (AR 967) (cited above), demonstrates otherwise.

out of ten, that he has had diarrhea for "x 5 years," and that he needs tests and medical records "for disability as well"); (AR 1336) (May 2012 record from Dr. Sutton assessing Plaintiff as having "diarrheal predominant irritable bowel syndrome" but specifically noting that the doctor had to profess a "lack of disability/functional capacity expertise").

In contrast, the Government—relying on the analysis provided by the ALJ in his opinion—can point to inconsistencies in Plaintiff's own testimony and the record evidence as to the severity and existence of Plaintiff's diarrhea.  For example, at the hearing before the ALJ, Plaintiff first testified that he needed to use the bathroom three to five times an hour, four to five hours a day, for four to eight minutes each time and that this condition had persisted since he was stabbed in the abdomen in October 2006.  (AR 62).[4]  But only moments later, when confronted with a log he had kept about his bowel movements, Plaintiff retreated from this position and conceded that, consistent with the log, he had only seven episodes a day.  (AR 82-83.)

Further, as the ALJ also noted (AR 37-38), the record evidence is inconsistent with Plaintiff's allegation of having endured such severe diarrhea since 2006.  For example, the record reveals multiple hospital visits in which he neither complained of nor sought treatment for diarrhea—a fact that is in tension with Plaintiff's claim that he has endured extended, frequent, and painful daily trips to the bathroom since 2006.  *See, e.g.*, (AR 954) (June 2010 record of five-hour long emergency-room visit in which Plaintiff was treated for being punched in the face and indicated to have no

---

[4] In the hearing transcript, Plaintiff states that he was stabbed in the abdomen in October 2007, but Plaintiff appears to have misspoken as there are multiple other references to the stabbing occurring in 2006.  *See, e.g.*, (Doc. # 12 at 10); (AR 928, 1028).

"GI" problems); (AR 1038-43) (May 2010 record of emergency room visit with no mention from Plaintiff about chronic diarrhea problems); (AR 1045) (July 2010 record of four-hour emergency visit with no reference to diarrhea as an impairment); *see also* (AR 17) (November 2012 letter from Dr. Sutton noting that did not evaluate Plaintiff for diarrhea between March 24, 2009, and May 2, 2011); (AR 1339) (June 2012 record from Dr. Sutton that Plaintiff's allegations of diarrhea had developed only "recently").

  Finally, the record abounds with evidence of Plaintiff's tendency to malinger and fixate on obtaining disability benefits rather than on seeking actual treatment of and improvement in his condition. *See, e.g.*, (AR 1287) (November 2012 record noting Plaintiff's tendency to malinger, his frequent cancelations in appointments, and the fact that Plaintiff "consistently references his disability case and needing [disability] to be granted"); (AR 1273) (December 2011 record noting that Plaintiff is "focused on getting disability benefits and is only [in]vested in this goal, which prevents him from having any interest in his recovery" and concluding that because Plaintiff "has no interest in recovery he hasn't invested [in] or made a commitment to recovery"); (AR 1238) (November 2011 record from a primary therapist indicating Plaintiff had evidence of malingering); (AR 1189) (June 2011 record noting that Plaintiff did not want a prior shoplifting charge to be part of his therapy plan because he was "afraid it will [a]ffect the administrative law judge decision regarding disability"); (AR 1117) (November 2010

record noting that Plaintiff's case was closed due to non-compliance with the treatment program).[5]

In light of all this evidence, it did not constitute reversible error for the ALJ to have concluded that Plaintiff's diarrhea was neither disabling nor severe. Indeed, at the hearing itself, Plaintiff went from asserting he had 12-24 bowel movements a day to conceding that record evidence based on his own self-reporting established he had only half of a number at lower end of that spectrum. If Plaintiff's **self-reporting** is so wildly inconsistent, it was not unreasonable for the ALJ to conclude that any metric Plaintiff had provided about his diarrhea could not be trusted. Further, this determination was supported by substantial evidence: namely, the dearth of objective medical evidence as to the severity of this alleged impairment and the evidence supporting Plaintiff's tendency to malinger and to view doctor's visits instrumentally as a means of obtaining disability.

Further, the ALJ considered the evidence outlined above in determining Plaintiff's RFC. (AR 35-38.) Thus, even if it was error for the ALJ to conclude that IBS was not a severe impairment, this error was harmless because the ALJ considered Plaintiff's diarrhea at step 3 of his analysis and concluded that, largely because of Plaintiff's

---

[5] Plaintiff argues that some of this record evidence should be discounted because some of it came from nurses and other clinicians who do not have requisite certifications to qualify as "acceptable medical sources to establish whether [Plaintiff has] a medically determinable impairment." 20 C.F.R. § 416.913(a). This argument fails. As an initial matter, at least one acceptable medical source, Dr. Kristiana Avery, also referenced Plaintiff's malingering, (AR 1238), which corroborates the reports of the non-clinicians who attested to Plaintiff engaging in the same behavior. Further, contrary to Plaintiff's apparent position, this Court sees no reason to ignore reports from non-clinicians on what Plaintiff has either said to them or done in the course of his treatment.

credibility problems, this impairment was not disabling.  *Accord Carpenter*, 537 F.3d at 1266; *see also Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) ("[A]n opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted."); *Guillen v. Comm'r of Soc. Sec.*, 232 F. App'x 699, 701 (9th Cir. 2007) (applying *Andrews*'s reasoning in the context of a claimed IBS impairment where the ALJ had made an adverse credibility finding against the claimant).

Finally, Dr. Sutton wrote a letter after the ALJ rendered a decision in Plaintiff's case that clarified the process he used to arrive at a diagnosis of IBS.  (AR 17-19.)  Plaintiff submitted this letter to the Appeals Council, which nevertheless determined that it would not have changed the outcome in Plaintiff's case.  (AR 2.)  Plaintiff alleges that the Appeals Council erred in reaching this conclusion and that this letter alone is dispositive as to the need for remand on this claim.

The post-decision letter is not the silver bullet Plaintiff thinks it is.  First, the letter confirms much of what the ALJ stated in his opinion: namely, that there were large gaps in Plaintiff's reporting or active seeking of treatment for diarrhea, *see* (AR 17) (noting a two-year gap in treatment for diarrhea), and that no objective clinical or laboratory examination confirmed the **severity** (as opposed to the existence) of Plaintiff's IBS.  Second, the letter offers no rebuttal to the allegations of malingering that figured prominently in the ALJ's analysis of this question, even though the record evidence establishes that Dr. Sutton relied on Plaintiff's self-reporting throughout the course of his diagnosis.  Third, the letter is far from dispositive as to whether Plaintiff's IBS is

disabling: Dr. Sutton's diagnosis covers any person "with recurrent pain or abdominal discomfort for at least [three] days per month in the last three months" that has improvement with defecation and a change in the frequency or consistency of his stool. (AR 18.)

To be sure, the letter does clarify why Dr. Sutton took so many years to make a definitive diagnosis of IBS: the doctor claims he was being careful to rule out other causes. This explanation somewhat undercuts the ALJ's off-handed suggestion that the 2012 IBS diagnosis may have been to "serendipit[ously]" coincide with Plaintiff's disability hearing. (AR 37.)

At the same time, while Dr. Sutton's letter might have led to some changes in the ALJ's original decision (and perhaps would have influenced the ALJ to identify IBS as a severe impairment), it would not have changed the result the ALJ reached, in light of the substantial record evidence (discussed above) that supports the ALJ's original determination. Thus, Dr. Sutton's letter does not provide a basis to remand this case for further consideration of Plaintiff's chronic diarrhea. *Accord O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994) (affirming an ALJ's decision notwithstanding new evidence submitted to the Appeals Council because the additional evidence "does not require a change in the outcome: the ALJ's determination remains supported by substantial evidence").[6]

---

[6] The Appeals Council's rationale for discounting Dr. Sutton's letter—that it contained "new information . . . about a later time" (AR 2)—is incorrect: the letter was written after the ALJ's decision but only clarifies events that occurred before the decision. Nevertheless, that does not change the fact that ALJ's decision on Plaintiff's diarrhea is supported by substantial evidence, notwithstanding Dr. Sutton's post-decision letter. Further, Plaintiff makes a closely related

9

2.     Dementia

Next, Plaintiff claims the ALJ erred in failing to find that Plaintiff's dementia was severe and disabling. Plaintiff's only support for this proposition is one reference to this ailment by an examining psychologist in an April 2008 report about Plaintiff's PTSD. (AR 931-32.)

In contrast, the Government can line up substantial contrary evidence that the ALJ relied upon in reaching a conclusion unfavorable to Plaintiff. As an initial matter, the Government points to evidence that Plaintiff was possibly attempting to use an incorrect dementia diagnosis as a means of obtaining disability: the record indicates Plaintiff sought to include in a medical record that he had dementia, was admonished that such a statement "would not be true," and posited that it might "be detrimental to his [disability] case if he doesn't have a diagnosis of dementia." (AR 1201.)

Further, Dr. Elizabeth Lowell-Tupa, Ph.D., a clinical psychologist, examined Plaintiff and provided a thorough analysis of his limited mental functioning. Dr. Tupa never considered Plaintiff to be suffering from dementia in the list of mental and psychological impairments that she considered, determined that Plaintiff did not have any significant mental impairments that would limit his ability to work, and assigned

---

argument that in discounting Dr. Sutton's opinion, the ALJ violated the treating physician rule, which requires the ALJ, when assessing the opinion of a treating physician, to determine the opinion's appropriate weight by looking to the factors which apply to all medical opinions and give good reasons for the weight he ultimately assigns it. *See, e.g.*, *Watkins v. Barnhart,* 350 F.3d 1297, 1301 (10th Cir. 2003). It should be clear by now that the above analysis undermines this argument: again, even if the ALJ erred in discounting the IBS diagnosis in the first instance, the error is harmless as the ALJ gave specific reasons—namely, Plaintiff's lack of credibility and the aforementioned inconsistencies in the record—for discounting the opinion.

Plaintiff a GAF score that was consistent with only mild limitations in mental functioning. (AR 1028-32.)[7]

Dr. Tupa's report, combined with the ALJ's rationale for discrediting Plaintiff's allegations of severer mental health limitations, constitutes substantial evidence to support the ALJ's no-dementia finding. *Accord Cowan v. Astrue,* 552 F.3d 1182, 1186 (10th Cir. 2008) (ALJ reasonably found a claimant had not shown a severe mental impairment where the record contained only one treatment note regarding that impairment, a mental status examination was within normal limits, and Government consultants found no severe mental impairment).

    3.    <u>Pain Disorder</u>

Finally, Plaintiff suggests the ALJ erred in failing to develop the record sufficiently to assess that he had severe or disabling Pain Disorder (*i.e.*, a disorder usually brought on by psychological stressors that can lead to incapacitating pain).

This argument fails. While the ALJ has a duty to develop the administrative record, the burden is on the claimant to make sure there is sufficient evidence in the record to suggest a reasonable possibility that such a severe impairment exists. *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009); *see also Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994) (noting that the ALJ's duty "is not a panacea for claimants . . .

---

[7] In conclusory fashion, Plaintiff suggests Dr. Tupa's report is only tentative and "professionally inaccurate." *See, e.g.*, (Doc. # 12 at 36; Doc. # 19 at 16.) Plaintiff is incorrect: Dr. Tupa based her analysis on a personal examination of Plaintiff and his behaviors over the course of a mental health interview. The Court sees nothing tentative about the thrust of Dr. Tupa's diagnosis. Further, Plaintiff provides no evidence to undermine the credibility of a mental health professional employed by the Government, and the Court presumes—especially absent evidence to the contrary—that such an individual is professionally qualified to render the opinions she provides.

which requires reversal in any matter where the ALJ fails to exhaust every potential line of questioning").

The Court sees no such reasonable probability here. No medical professional had diagnosed such a disorder, nor had Plaintiff presented any other affirmative evidence indicating that this was a disorder he in fact thought he had or one that could reasonably be attributed to him.

**B.   DISCOUNTING THE OPINION OF THE TREATING PHYSICIAN IN THE RFC**

Next, Plaintiff cites to what are mostly "check-the-box" evaluations filled out by three doctors: Nicole Joseph (AR 936-37, 1252-53, 1256); John Kratchko (AR 1254-55); and Ingrid Binswanger (AR 1257-58.) It appears undisputed that all three of these doctors were treating physicians for Plaintiff and they all opined that Plaintiff's various impairments—from ankle problems to his alleged mental health limitations—significantly limited Plaintiff's residual functional capacity. The ALJ considered (and discounted) only the opinion of Dr. Joseph but appears to have failed to register the existence of the similar opinions provided by the other two doctors.

There are many reasons that an ALJ **could** discount the opinions of these treating sources: some of these opinions predate the effective date of Plaintiff's disability, others render an opinion on the ultimate issue of disability, most are devoid of much analysis to support the proffered diagnoses, and all could be interpreted as contradicting the weight of record evidence. Further, the ALJ provided some of these same rationales in discounting the opinion of Dr. Joseph. *See* (AR 39) (rejecting Dr. Joseph's opinion because it was not supported by objective findings, was

inconsistent with the medical evidence, and provided an opinion on the ultimate issue of disability).)

At the same time, if an ALJ decides not to assign controlling weight to the treating source's opinion, he must give "specific, legitimate reasons for his decision." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).  The ALJ did not fully adhere to this mandate when he failed to consider the opinions of Drs. Kratchko and Binswanger.  While the ALJ committed no error in discounting Dr. Joseph's opinion,[8] this Court cannot avoid remand, given the utter lack of analysis as to the merits of these treating sources' evaluations.

Further, the failure to consider these doctors' opinions casts doubt on the validity of the entirety of the ALJ's RFC.  Plaintiff advances a number of additional arguments pointing to alleged errors in the ALJ's RFC analysis and the hypothetical questions—seemingly based off of the RFC—that the ALJ asked to a vocational examiner (VE) who testified at Plaintiff's hearing.  The Court declines to reach these arguments at this time, in light of the fact that its evaluation of these claims is tied to the defective analysis of these treating source's opinions.  The ALJ should consider the arguments raised by the Plaintiff on remand.[9]

---

[8] Indeed, this Court notes that for basically the same reason Judge Brimmer affirmed an ALJ's earlier decision to reject Dr. Joseph's evaluation of Plaintiff's disability.  In turn, Judge Brimmer's reasoning as to the ALJ's basis for rejecting Dr. Joseph's evaluation was endorsed by the Tenth Circuit.  *See Taylor v. Astrue*, No. 10-CV-01891-PAB, 2011 WL 3236099, at *3-4 (D. Colo. July 28, 2011), *aff'd*, 494 F. App'x 895 (10th Cir. 2012).  While Plaintiff appears to have provided further records from Dr. Joseph in this appeal, they are all of the same "check-the-box" variety and devoid of any analysis to support the diagnoses proffered in the evaluations.

[9] At the hearing, the ALJ asked the VE whether the need to use toilet facilities seven times over the course of a twenty-four hour period would preclude work for someone with impairments

**C.    ALJ BIAS**

Finally, Plaintiff asserts that the ALJ is biased against him and that remand to the same ALJ would be inappropriate.  Plaintiff raised this same issue with the Appeals Council, which reviewed the record consistent with the agency's regulations and policies and determined there was not an abuse of discretion.  (AR 2.)  If, in conjunction with a request for review, the Appeals Council receives an allegation of ALJ unfairness, prejudice, partiality, or bias, the Appeals Council will review the claimant's allegations and hearing decision under the abuse of discretion standard. The Appeals Council will find an abuse of discretion when an ALJ's action is erroneous and without any rational basis, or is clearly not justified under the particular circumstances of the case, such as where there has been an improper exercise, or a failure to exercise, administrative authority. 20 C.F.R. § 404.970(a)(1); SSR 13-1p, 2013 WL 1615875, at *3.

The Court agrees with the Government that the Appeals Council reasonably found no abuse of discretion.  The ALJ acted rationally when he denied Plaintiff's request to amend his alleged onset date and when he requested that the ALJ reopen a prior application, which was pending before the Tenth Circuit Court of Appeals.

---

similar to Plaintiff's.  (AR 94.)  The VE said that such a requirement would preclude competitive work.  (*Id.*)  Plaintiff emphasizes this colloquy between the ALJ and VE throughout his briefing and suggests that this is one of the many errors the ALJ committed in the five-step sequential process.  The ALJ should address this matter on remand.  Finally, at step five of the sequential analysis, the ALJ determined that Plaintiff was able to work in 1400 different in Colorado and 213,000 different jobs in the United States.  Plaintiff suggests that this number is insignificant and that the ALJ could not meet his burden at step five.  This argument revisits the same issue that was already rejected by the Tenth Circuit in Plaintiff's own prior case and although the Court need not reach this argument in this appeal, any rehashing of the same argument in a further appeal would fail.  *See Taylor*, 494 F. App'x 895, 898 (10th Cir. 2012) (noting that 140,000 jobs nationally is not too small a number to be a significant number for purposes of the step-five analysis and collecting authorities in support of this position).

(AR 26-28.) Similarly, the ALJ acted rationally and he reasonably weighed the record evidence, including the medical source evidence. (AR 31-32). This Court interprets no malicious intent behind the ALJ's one prominent error: his failure to consider every one of the multitude of treating source opinions proffered by Plaintiff. In sum, Plaintiff's conclusory assertion of ALJ bias fails.[10]

### III. CONCLUSION

The ALJ committed reversible error in failing to consider the opinions of two treating sources who evaluated Plaintiff's impairments and concluded that they severely limited his ability to perform a multitude of tasks. Accordingly, it is ORDERED that the ALJ's denial of disability benefits is REVERSED and REMANDED for the limited purpose of determining how the unconsidered opinions of these treating physicians affect Plaintiff's alleged disability.

DATED: September 5, 2014

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[10] This same position holds true for the bias that Plaintiff alleges infects the entire Social Security system: seemingly from the ALJ, to the Appeals Council, to the Government attorneys representing the Commissioner. (Doc. # 19 at 33-35.) These dedicated public servants have embraced a position contrary to Plaintiff's interests, but that does not mean that they have engaged in some sort of coordinated conspiracy to prejudge (or unjustly deny) Plaintiff's disability claim.